```
┌─────────────────┐
│   INTERCEPT     │
│     .COM        │
│       ★         │
│   ATTORNEY      │
│   SERVICES      │
│       ★         │
│   WATERLOO      │
│     IOWA        │
└─────────────────┘
```

319-233-8293 Office
319-232-2328 Fax

**Charlene A. Ackerman**
CEO

319-215-7462 Cell
319-215-7424 Cell

866 E. Orange Rd
Waterloo, IA 50701

## AFFIDAVIT OF RETURN OF SERVICE

STATE OF IOWA )
)
BLACK HAWK COUNTY)SS

I, the undersigned being first duly sworn on oath do hereby depose and state that I received the attached notice order, and/or other document(s) on the _14_ day of _October_ 20 _18_, that on the _22_ day of _October_ 20, _18_, I served the same on the within-named _Steve Hoambrecker_ at _3505 Easton Ave._ in _Waterloo, Iowa 50701_ in _Black Hawk_ County, Iowa by delivering a true and identical copy of each such item in the following manner:

_X_ I served the same by delivering a copy thereof to the above person(s) personally.

___ I served the same on the above person at the above person's dwelling house or usual place of abode (which place was not a rooming house, hotel, club or apartment building) by there delivering a copy thereof to the individual named below, a person residing therein who was then eighteen years old.

___ I served the same on the above person at the above person's dwelling house or usual place of abode (which place was a rooming house, hotel, club or apartment) by there delivering a copy thereof to a member of the family or manager, clerk, proprietor or custodian named and described below, a person who was then eighteen years old.

___ I served the same on the above person who attempted to elude and/or evade due process in the following manner, to wit _____

___ I served the above company and/or corporation by delivering a copy to the person named and described below. Said service was made at the address shown below, if any, otherwise at the above address.

NAME AND TITLE OR RELATIONSHIP OF INDIVIDUAL SERVED (IF NOT SHOWN ABOVE):

REMARKS (SERVICE TIME) _9:00 am_

PROCESS NO.: _8099_
_LACV 135909 Original Notice_

BY _Charlene Ackerman_
PROFESSIONAL INDEPENDENT PROCESS SERVER

SUBSCRIBED AND SWORN TO BEFORE ME THE SAID _Charlene Ackerman_
THIS _22_ DAY OF _October_, 20 _18_

_Paul Ackerman_
NOTARY SEAL

MY COMMISSION EXPIRES _02-04-2021_

```
┌──────────────────────────┐
│ PAUL H ACKERMAN          │
│ COMMISSION NO. 739321    │
│ MY COMMISSION EXPIRES    │
│ 02-04-2021               │
└──────────────────────────┘
```

```
INTERCEPT
.COM
★
ATTORNEY
SERVICES
★
WATERLOO
IOWA
```

319-233-8253 Office
319-232-2328 Fax

**Charlene A. Ackerman**
CEO

319-215-7462 Cell
319-215-7424 Cell

866 E. Orange Rd
Waterloo, IA 50701

## AFFIDAVIT OF RETURN OF SERVICE

STATE OF IOWA          )
                       )
BLACK HAWK          COUNTY)SS

I, the undersigned being first duly sworn on oath do hereby depose and state that I received the attached notice order, and/or other document(s) on the _19_ day of _October_ 20 _18_, that on the _22_ day of _October_ 20, _18_, I served the same on the within-named _City Clerk for City of Waterloo Iowa_ at _715 Mulberry St._ in _Waterloo, Iowa 50703_ in _Black Hawk_ County, Iowa by delivering a true and identical copy of each such item in the following manner:

____ I served the same by delivering a copy thereof to the above person(s) personally.

____ I served the same on the above person at the above person's dwelling house or usual place of abode (which place was not a rooming house, hotel, club or apartment building) by there delivering a copy thereof to the individual named below, a person residing therein who was then eighteen years old.

____ I served the same on the above person at the above person's dwelling house or usual place of abode (which place was a rooming house, hotel, club or apartment) by there delivering a copy thereof to a member of the family or manager, clerk, proprietor or custodian named and described below, a person who was then eighteen years old.

____ I served the same on the above person who attempted to elude and/or evade due process in the following manner, to wit _____

_X_ I served the above company and/or corporation by delivering a copy to the person named and described below. Said service was made at the address shown below, if any, otherwise at the above address.

_Kelley Felchle - City Clerk_

NAME AND TITLE OR RELATIONSHIP OF INDIVIDUAL SERVED (IF NOT SHOWN ABOVE).

REMARKS (SERVICE TIME) _9:15 Am_

PROCESS NO.: _8098_

_LACV 135909 Original Notice_          BY _Charlene Ackerman_
                                        PROFESSIONAL INDEPENDENT PROCESS SERVER

SUBSCRIBED AND SWORN TO BEFORE ME THE SAID _Charlene Ackerman_

THIS _22_ DAY OF _October_, 20 _18_

                                        _Paul Ackerman_
                                        NOTARY SEAL

MY COMMISSION EXPIRES _02-24-2021_

```
PAUL H ACKERMAN
COMMISSION NO. 739321
MY COMMISSION EXPIRES
02-24-2021
```

IN THE IOWA DISTRICT COURT IN AND FOR BLACK HAWK COUNTY

| | | |
|---|---|---|
| MARK LOUIS BRANDES, SR., | ) | |
| | ) | No. LACV |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | PETITION AT LAW AND |
| | ) | JURY DEMAND |
| CITY OF WATERLOO, IOWA and | ) | |
| STEVE HOAMBRECKER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW the Plaintiff, Mark L. Brandes, Sr., by and through his undersigned attorneys and for his cause of action against the City of Waterloo, Iowa (hereinafter referred to as "the City) and states as follows:

## COMMON FACTUAL BACKGROUND

1.      Plaintiff, Mark L. Brandes, Sr., is and at all material times has been a citizen of Iowa and a resident of Black Hawk County, Iowa.

2.      Plaintiff was employed with the City from 1993 to June 26, 2017 when he was terminated.

3.      Defendant the City is an Iowa municipality located in Black Hawk County, Iowa.

4.      Defendant, Steve Hoambrecker, is a resident of and at all material times, has been, a resident of Black Hawk County, Iowa.

5.     Plaintiff originally started working for the City in various departments and in 1995 went to work in the engineering department for the City.

6.     From the time that Mr. Brandes started working for the City until 2016, Mr. Brandes never was the subject of any disciplinary hearings or warnings as a City employee.

7.     Plaintiff was one of the older members of his department at the City when he was terminated.

8.     From the time that Mr. Steve Hoambrecker was hired in June of 2016, he was hostile and abusive to Mr. Brandes.

9.     Plaintiff performed all legal conditions under his contract and has complied in good faith with the terms of the contract.

10.     In June of 2016 (the second week that Mr. Hoambrecker was with the department) he removed Mr. Brandes from his position as acting Collections System Supervisor.

11.     In September of 2016, Mr. Hoambrecker gave Plaintiff a written warning for poor job performance in a Performance Improvement Plan.  The Plan contained duties that were not even part of the Plaintiff's position and further contained non quantifiable and vague allegations about the Plaintiff's supposed deficiencies in his job performance.

2

12.     In November of 2016, the Plaintiff was given a week's suspension for poor performance and for the claim that he used a white board to give daily directions to City sewer crews. These allegations were false.

13.     In January, 2017, Plaintiff was reassigned and demoted from his duties and basically given the duties of the CMOM Technician, Laura Wolff (who had originally reported to Plaintiff) and that is Plaintiff was to review videos of sewer lines (eight hours a day). This really was a demotion, but the City tried to treat it as not being a demotion or it would have violated the civil service rules in effect at the time.

14.     Plaintiff attempted to transfer back to his former position in the Engineering Department because he had retained his seniority when he transferred to the Waste Management Services Department. The City did not let the Plaintiff transfer back to his old department but instead created a "special" position for him at the Waste Management Department. This kept Plaintiff under the direct supervision of Mr. Hoambrecker.

15.     The City gave Plaintiff the "special" position even though this did not comply with civil service rules in effect at the time. Plaintiff declined this option because it was not the option he was entitled to under the civil service rules.

16.     On or about February 27, 2017, Plaintiff was informed by a co-worker of an illegal discharge of raw sewage into the Cedar River. Plaintiff notified three City Council members of this situation so that it could be investigated.

3

17.     Sometime in August of 2016, Plaintiff's health started to decline because of the harassment and targeting he was facing from Mr. Hoambrecker and others at his instigation. He suffered extreme anxiety from this behavior.

18.     In April of 2017, Plaintiff returned to work with (FMLA) Family Medical Leave Act papers. Plaintiff was given the run around and told that he needed his FMLA papers signed by a doctor at the Mayo Clinic. This turned out to be not true. He had one FMLA paper signed for his existing condition and the second was for the new mental health/anxiety issues he was facing because of his treatment at work.

19.     Plaintiff was relocated to a desk near the front door (even though there was plenty of empty office space in the building he was in). He was put in a cramped space (his refrigerator was jammed up behind his chair). He was given no privacy and was not even given a waste basket for his "office."

20.     On April 24, 2017, Plaintiff was given a written memo telling him to clean out his previous office as soon as possible. Given his health situation and the inability to lift anything heavy, it was going to take some time. No accommodation was forthcoming from Mr. Hoambrecker on how to get this done.

21.     On May 2, 2017, Plaintiff was written up for not filling out a log sheet for a single video he had viewed. To Plaintiff's knowledge, no one else in the entire City had to fill out log sheets the way he did.

4

22.    Plaintiff was placed on administrative leave on June 8, 2017. He had a pre-termination hearing on June 22, 2017. Plaintiff received a letter of termination on June 26, 2017.

## COUNT I
## WRONGFUL DISCHARGE – VIOLATION OF PUBLIC POLICY

23.    Paragraphs one through 22 are hereby incorporated through this reference as though fully set forth herein.

24.    The Plaintiff worked for the City from 1993 until June 26, 2017 (when he was terminated as an employee).

25.    Starting on or about February 27, 2017 Plaintiff was engaged in a statutorily protected activity including, but not limited to, the following:

A.    The Plaintiff informed three City Council members of an illegal sewage discharge into the Cedar River.

B.    The Plaintiff took FMLA leave.

C.    The Plaintiff complained about payments for wages not being properly paid to him.

D.    The Plaintiff sought accommodations for his disabilities to help him perform his job.

E.    The Plaintiff supported an age discrimination case filed by his former supervisor, Larry Smith, when Larry Smith was fired without cause.

F.    The Plaintiff reported Steve Hoambrecker for intentionally attempting to file false claims with FEMA for Disaster Recovery Aid related to flooding in October 2016.

26.    The Plaintiff was terminated on or about June 26, 2017.

5

27.    The Plaintiff was terminated because he was engaged in statutorily protected activities.

28.    Defendants knew of Plaintiff's protected activity.

29.    It was a short amount of time between the protected activity and the discharge.

30.    Said termination is against public policy.

31.    As a result of Plaintiff's termination, Plaintiff has sustained damages including, but not limited to, loss of 401k, loss of stock options, loss of salary, loss of health insurance, loss of health insurance, loss of commissions, loss of bonuses, and future losses of all these listed items.

WHEREFORE, the Plaintiff prays for damages in an amount adequate to pay him for loss on his IPERS, loss of salary, loss of health insurance, and future losses on all these listed items as well as interest from the date of filing, court costs, attorneys' fees, and such other damages as the Court deems just and equitable.

## COUNT II
## AGE DISCRIMINATION

32.    Paragraphs one through 31 are hereby incorporated through this reference as though fully set forth herein.

33.    The Plaintiff was one of the oldest City employee in the waste management services department until he was terminated on June 26, 2017.

6

34.     The Plaintiff applied for a promotion on January 29, 2017 which was denied.

35.     The Plaintiff filed a complaint with the Iowa Civil Rights Commission on or about February 26, 2018.  See Exhibit "A" attached hereto.

36.     The Plaintiff received his right to sue letter on or about July 18, 2018.  See Exhibit "B" attached hereto.

37.     Mr. Brandes had excellent qualifications for the position with the City and he was an outstanding performer for years prior to his termination with a spotless record.

38.     The actions of the Defendants in requiring Mr. Brandes to have higher reporting standards, constant supervision, and harassment constitute unlawful discrimination against the Plaintiff based upon his age in violation of Iowa Civil Rights Act, Iowa Code §216.6.

39.     The Defendants violation of the Iowa Civil Rights Act is the proximate cause of the Plaintiff's injuries and damages as set forth below.

40.     The Plaintiff was fired or terminated because of his age and treated differently because of his age.  The Plaintiff is 58 years old at this time and was 57 years old at the time he was terminated.

41.     The Plaintiff has suffered damages because of disparate treatment including loss of IPERS, and failure to treat the Plaintiff the same as younger employees

7

in his department and by his discharge from his employment with the Defendants loss of enjoyment of life, embarrassment, angst, and emotional distress.

42.     The Plaintiff has been damaged because of this discrimination including, but not limited to, loss of IPERS, loss of salary, loss of health insurance, and future losses of all these listed items as well as loss of enjoyment of life, embarrassment, angst, and emotional distress.

WHEREFORE, the Plaintiff prays for damages in an amount adequate to pay him for loss on his IPERS, loss of salary, loss of health insurance, and future losses on all these listed items as well as interest from the date of filing, court costs, attorneys' fees, and such other damages as the Court deems just and equitable.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43.     Paragraphs one through 42 are hereby incorporated through this reference as though fully set forth herein.

44.     The Plaintiff was subjected to outrageous conduct by the Defendant Hoambrecker and the City of Waterloo.

45.     Said conduct included seating the Plaintiff, an employee with a spotless record, in an area in the building that would cause other employees to wonder as to his status; not providing him with the tools necessary to do his job; in singling him out for behavior that was tolerated for everyone else; in citing him for "violations" that no one else was ever cited for and other actions directed at the Plaintiff.

8

46.     The Defendants created an intimidating and hostile work environment that had an effect of unreasonably interfering with Plaintiff's ability to perform tasks required.

47.     The Defendants intentionally caused emotional distress or acted with reckless disregard of the probability of causing emotional distress.

48.     The Plaintiff has suffered severe and extreme emotional distress and is under the care of a psychologist and psychiatrist.

49.     The Defendants' outrageous conduct was the cause of the Plaintiff's emotional distress.

50.     The Plaintiff has to remain under the care of a psychologist, has debilitating anxiety, has to take prescription drugs to control his anxiety and has suffered additional damages.

WHEREFORE, the Plaintiff prays for damages in an amount adequate to pay him for loss on his IPERS, loss of salary, loss of health insurance, and future losses on all these listed items as well as interest from the date of filing, court costs, attorneys' fees, and such other damages as the Court deems just and equitable.

## COUNT IV
## PUNITIVE DAMAGES

51.     Paragraphs one through 50 are hereby incorporated through this reference as though fully set forth herein.

9

52.     The actions of the Defendants were a willful and wanton disregard of the rights of the Plaintiff.

53.     Punitive damages should be awarded to punish and discourage the Defendants and others from like conduct in the future.

WHEREFORE, the Plaintiff prays that the Court award punitive damages in an amount that will punish and discourage like conduct by the Defendants in the future, and for such other and further relief as the Court deems just and equitable.

### COUNT V
### UNFAIR EMPLOYMENT DISCRIMINATION AGAINST
### PLAINTIFF BECAUSE OF DISABILITY

54.     Paragraphs one through 53 are hereby incorporated through this reference as though fully set forth herein.

55.     The Plaintiff was suffering from a disability that the Defendants were well aware of (work related back injury that was the subject of a workers' compensation action).

56.     The Plaintiff by his education and training was able to perform the functions of his occupation in the waste management division or in his old position at the engineering department in Waterloo.

57.     The Defendants discriminated against the Plaintiff based upon his back related disability as well as the mental disability he began to suffer from based upon the harassment actions of the Defendants.

10

58.     The Defendants did not make any reasonable attempt to accommodate the Plaintiff for either condition that he was suffering from.

59.     The actions of the Defendants violated Iowa Code §§ 216.6, 216.6(a), and 216.7, among other Sections of the Iowa Code.

60.     The Plaintiff was damaged by the actions of the Defendants in failing to accommodate the Plaintiff, in failing to allow him to perform either the job he held at the time of his termination or his previous position in the engineering department.

WHEREFORE, the Plaintiff prays for damages in an amount adequate to pay him for loss on his IPERS, loss of salary, loss of health insurance, and future losses on all these listed items as well as interest from the date of filing, court costs, attorneys' fees, and such other damages as the Court deems just and equitable.

## COUNT VI
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

61.     Paragraphs one through 60 are hereby incorporated through this reference as though fully set forth herein.

62.     The Defendants used the taking of FMLA leave as a negative factor when dealing with the Plaintiff in matters such as promotions, disciplinary actions in violation of 29 C.F.R. § 825.220(c).

63.     The Defendants used the FMLA protected leave that the Plaintiff took as a negative factor in the decision to terminate the Plaintiff in June of 2017.

11

64.    This was an interference with the Plaintiff's rights under the FMLA 29 C.F.R. § 2515(a)(1).

65.    In addition the Defendants failed to keep the Plaintiff's confidential information private from co-workers in violation of 42 U.S.C. §12112(d) (ADA) and 29 U.S.C. §2601 (FMLA).

WHEREFORE, the Plaintiff prays for damages in an amount adequate to pay him for loss on his IPERS, loss of salary, loss of health insurance, and future losses on all these listed items as well as interest from the date of filing, court costs, attorneys' fees, and such other damages as the Court deems just and equitable.

## JURY DEMAND

The Plaintiff prays that each and every issue in this case be tried to a jury.

Respectfully submitted,

Larry J. Thorson                              #AT0007976
ACKLEY, KOPECKY & KINGERY, L.L.P.
4056 Glass Road NE
Cedar Rapids, IA 52402
Ph: (319) 393-9090   Fax: (319) 393-9012
Email: lthorson@akklaw.com

Attorneys for Plaintiff

12

# IOWA CIVIL RIGHTS COMMISSION COMPLAINT FORM
### 515-281-4121 / 800-457-4416 / Fax: 515-242-5840 / https://icrc.iowa.gov

(AGENCY USE ONLY)
ICRC CP#
Local Commission#
HUD#

Iowa Civil Rights Commission
400 East 14th Street
Des Moines, Iowa 50319-0201

### (PLEASE TYPE OR PRINT LEGIBLY)

## SECTION 1: COMPLAINANT INFORMATION

Your legal name: *Mark Louis Brandes Sr.*

Your mailing address: *616 Jones Rd*

City: *Waterloo*                    State: *IA*          Zip Code: *50707*

Telephone #: *319-239-2715*

Email address: *mastermark9@gmail.com*

Your date of birth: ▨▨▨▨          Your sex/gender: *Male*

Have you previously filed this complaint with any other federal, state, or local anti-discrimination agency?    [ ] Yes          [ X ] No

If yes, what agency? _____ When? _____

## SECTION 2: DISCRIMINATION INFORMATION

1. Please indicate the **AREA(S)** in which the discrimination occurred.

[ X ] Employment          [ ] Public Accommodation          [ ] Housing
[ ] Education             [ ] Credit                        [ X ] Retaliation

2. Please indicate the **ACTION(S)** that the organization took against you.

[ X ] Demotion
[ X ] Denied Accommodation or Modification
[ X ] Denied Benefits
[ ] Denied Financial Services/Credit
[ ] Denied Service
[ X ] Discipline
[ ] Eviction
[ ] Failure to Hire
[ X ] Failure to Promote
[ ] Failure to Rent

[ ] Failure to Recall
[ ] Failure to Train
[ *Attempted* ] Forced to Quit/Retire
[ X ] Harassment
[ ] Layoff
[ ] Reduced Hours
[ X ] Reduced Pay
[ ] Sexual Harassment
[ X ] Suspension
[ X ] Termination
[ X ] Undesirable Assignment/Transfer
[ X ] Unequal Pay

[ ] Other: _____

3. Please indicate the **BASIS(ES)** or reasons for the discrimination.

Page 1 of 9

EXHIBIT " A "

a. Do you believe you were discriminated against because of your race? _No_

If yes, what is your race? _____

b. Do you believe you were discriminated against because of your skin color? _No_

If yes, what is your skin color? _____

c. Do you believe you were discriminated against because of your national origin? _No_

If yes, what is your national origin? _____

d. Do you believe you were discriminated against because of your sex? _No_

If yes, what is your sex? _____

e. Do you believe you were discriminated against because of your sexual orientation? _No_

If yes, what is your sexual orientation? _____

f. Do you believe you were discriminated against because of your gender identity? _No_

If yes, what gender do you identify as? _____

g. Do you believe you were discriminated against because of a real or perceived disability? _Yes_

If yes, what is your real or perceived disability? _Old work related back injury-classified as 66.6%_
_permanently disabled. Also, chronic bowel condition._

h. Do you believe you were discriminated against because of your religion or creed? _No_

If yes, what is your religion or creed? _____

i. Do you believe you were discriminated against because of your pregnancy or pregnancy -
related condition? _No_

j. If your complaint involves employment or credit, do you believe you were discriminated
against because of your age? _Yes_

If yes, do you believe you were discriminated because you are older or because you are
younger? _Older_

k. If your complaint involves housing or credit, do you believe you were discriminated against
based on your familial status? _No_

If yes, how many children live with you? _____

l. If your complaint involves credit, do you believe you were discriminated against based on your
marital status? _No_

If yes, what is your marital status? _____

m. Do you believe you were retaliated against because you reported discrimination to someone
within the organization, filed a complaint with the ICRC, or participated as a witness in an
anti-discrimination agency proceeding? _Yes_

If yes, what did you report or complain about, and to whom?

2

*I did not formally report any discrimination or participate in any ICRC proceedings, but it is well known that I am friends with and supported my former supervisor, Larry Smith's claim of age discrimination against the City.*

State what happened to you as a result of your report or complaint.

4. What was the date (month/day/year) of the MOST RECENT discriminatory incident? (REQUIRED):
   *11/21/17 (if that particular incident does not count, than prior to that 6/26/17.*

5. If Employment is the Area, what is your hire date or application date? *Employed since 1995.*

6. Are you still employed by the organization that discriminated against you?  ☐ Yes  [ X ] No

   If no, when did your employment end? *6/26/17* _____ (month, day, year)

   If no, how did your employment end?

   [ X ]  Terminated ☐ ☐ ☑Voluntary Quit ☐Forced to Quit/Retire

**SECTION 3: RESPONDENT INFORMATION**

7. What is the full legal name of the organization that discriminated against you?
   [This organization will be charged with discrimination and given a copy of your complaint.]
   *City of Waterloo, IA*
   Address: *715 Mulberry St.*
   City: *Waterloo* _____ County: *Black Hawk* _____ State: *IA*
   Zip Code: *50703* _____ Telephone #: ( *319* ) *291* - *4323*

8. If the organization listed in #7 has a parent organization or corporate office, list it here.
   [This organization will also be charged with discrimination and given a copy of your complaint.]

   Address: _____
   City: _____ State: _____
   Zip Code: _____ Telephone #: (_____) _____ - _____

9. Provide the address of the location where the discrimination occurred:
   *3505 Easton Ave Waterloo, IA 50702  /  715 Mulberry St Waterloo, IA 50703*

10. If you are claiming harassment, identify the individual(s) who harassed you.  These individuals will be charged with discrimination and will be given a copy of your complaint.
    *Note: Individuals cannot be named as respondents in complaints in the Area of Education*
    Name: *Jim Rodemeyer* _____ Job Title: *Former Interim Director of Human Resources*
    Work or Home Address: *715 Mulberry St Waterloo, IA 50703*
    Name: *Lance Dunn* _____ Job Title: *Human Resources Director*

Page 3 of 9

3

Work or Home Address: _715 Mulberry St Waterloo, IA 50703_

Name: _Cheryl Huddleston_ Job Title: _Human Resources Managers_

Work or Home Address: _715 Mulberry Waterloo, IA 50703_

Name: _Steve Hoambrecker_ Job Title: _Director of Waste Management Services_

Work or Home Address: _3505 Easton Ave Waterloo, IA 50702_

Name: _Quentin Hart_ Job Title: _Mayor of Waterloo_

Work or Home Address: _715 Mulberry St Waterloo, IA 50703_

If more than two individuals, please list by name, job title, and address on an attached piece of paper.

11. If Employment is the Area, indicate approximate number of ALL employees (full-time and part-time) at ALL employer locations nationwide (REQUIRED):

[ ] 4-14    [ ] 15-19    [ ] 20-100    [ ] 101-200 [ ] 201-500    [ X ] 500+

## SECTION 4: BRIEF SUMMARY OF ALLEGATIONS

I started working for the city as a temp in the Engineering Department in 1993 and was hired as a regular full time employee in 1995. In July 2015, I transferred to the Waste Management Services Department and became the Collections, Maintenance, Operations and Management Specialist (CMOM Specialist).

In Sept. 2003, I was injured in a work related vehicle accident. As a resulting back injury, I was declared 66.6% permanently disabled. Since then, I have developed a chronic bowel disorder, which may be caused by nerve damaged from this initial injury. In February 2016, I began seeking treatment at the Mayo Hospital in Rochester, MN. In August 2016, I was diagnosed with an extruding disk at L3-4. Because of my previous back injuries and surgeries, they said the said it was too risky to surgically repair it. Instead, in order to manage the pain, they surgically implanted an electronic neurostimulator in my back in January 2017. From February 2016 to April 2017, I had appointments and procedures on 19 days. In addition to this, I had to take some days off following some of these medical procedures for recovery. All of these days were covered by my paid personal days, except for one that took place while I was on FMLA leave. FMLA began on April 1st, 2017.

Up until 2016, I had never received any disciplinary actions or warnings. In June 2010, I was named employee of the month.

In October 2013, the department's Collections System Supervisor, Keith Kerns, retired. In his absence, my supervisor, Larry Smith, appointed me as acting Collections System Supervisor. My supervisor submitted a request to post the job opening and find a replacement to fill this position. He also proposed as an alternative, that it might be more efficient and cost effective to eliminate the Collections System Supervisor position by splitting the work duties of that position between myself

and another employee (with the majority of the duties given to me.) He proposed reasonable pay increases to compensate the additional work.

The city turned down his proposal to eliminate this position and additionally ceased all efforts to find a suitable replacement for this position. This left me to perform dual roles. Given that Keith Kerns' salary was higher than mine, I should have been given payment for work performed out of classification. I know that Larry Smith made the request to the Human Resources Department for me to get this compensation but HR did not follow through.

In Sept. 2015, Laura Wolff was promoted from a clerk to a newly created position of CMOM Technician. The main functions of this position was to watch and rate sewer videos and compile reports. I had recommended her for this position. This promotion also made me her direct supervisor.

In Sept. 2015, the Superintendent, Larry Smith, was discharged by Mayor Clark, for apparently little or no reason. Shortly before this happened, Larry had experienced a period of poor health. He filed with the EEOC for age discrimination but ultimately lost his case. It was well known that I had become good friends with Larry and although I did not participate in his EEOC hearings, it was well known that I supported his claim and helped him gather documents used as evidence in his hearings.

In October, the City signed a contract with AECOM to provide one of their engineers, John LaPointe, to act as interim superintendent until a suitable replacement could be found. As soon as he arrived at the plant, Laura made a point to work directly with him as much as possible, and in doing so, often broke the chain of command. I was often excluded from important information that was essential to my duties and responsibilities, as she was intentionally worked to undermine me. This was made easier by my many absences due to my health.

In June 2016, Steve Hoambrecker was hired as the new Director of Waste Management Services. As soon as he started, he was markedly hostile towards me. In his first week, he threatened me with termination for a minor policy violation. Note: It would have been a direct violation of the City's progressive disciplinary policy for him to fire me for this.

The following week, I was called to a meeting with Director Hoambrecker and HR. It was explained to me that the purpose of the meeting was to "clarify my role as CMOM Specialist". Essentially, they removed me from the role of acting Collections System Supervisor which I had been performing for more than 2 years (although they now deny that I ever served in this capacity, even though I can prove that I did and that they were fully aware of it). Additionally, I was accused of poor job performance.

It is obvious that he was biased and influenced by other individuals. He could not have accurately assessed my job performance in two weeks. I believe that Laura Wolff, John LaPointe, and others influenced his decisions.

In Sept. 2016, I was given a written warning for "poor job performance" and a Performance Improvement Plan (PIP). All of the items he cited I can explain or show how they are untrue. In

short, everything I did, was in some vague and unquantifiable way, never good enough. Additionally, many of these items were not priority tasks. Some were not even the duties of my position nor were they within the scope of the WMS.

In November 2016, I was written up again, and this time given a week's suspension, for "poor job performance". The accusations were basically the same, with the additional accusation that I had purchased a white board to be used to "give daily directions to the sewer crews" and that I had not been using it as intended. I had purchased the white board prior to Director Hoambrecker being employed with the city and it was never intended to be used in such a fashion. It was for everyone to use to communicate with others. Furthermore, referring back to the meeting in June to "clarify my role as CMOM Specialist", I was told that it was no longer part of my duties to give directions to the sewer crews and that instead, the foreman would report directly to Director Hoambrecker himself. My union filed a grievance over the suspension and in February, it went to the Mayor for a ruling. Mayor Hart denied the grievance. I was told by a coworker that they heard him state at the time of this decision that "he doesn't like me because of my divorce." What does my personal life have to do with anything?

At the end of January, I was demoted from my position as CMOM Specialist. After I was demoted, the Director and HR realized that I could appeal this decision to the Civil Service Commision, and so they very quickly tried to cover it up by saying that, because my pay wasn't reduced, it was actually a "reassignment", not a demotion. The fact is, prior this, the CMOM Technician, Laura Wolff reported to me. After this happened, I was told that I was to report to her. This reversal of roles clearly demonstrates a demotion. I was told that my only work assignment now was to review and rate sewer videos. This is a major part of what Laura's role was as CMOM Tech.

Under civil service rules, if I was demoted from my position, I could "bump" back to my former position in the Engineering Department, because I had retained my seniority when I took the transfer. Whoever had the least seniority in the department would have to be laid off. When I tried to invoke this rule, they responded by saying they would let me return to the position of an Engineering Technician, but that they would create a special position for me at the Waste Management Plant and I would continue to work under Director Hoambrecker. This would not have resolved the issues I was having and this scenario they came up with is completely unprecedented. They were going to create a fake position, a position that wasn't needed, just to keep me under Director Hoambrecker's thumb so he could continue his crusade to force me out. Besides that, this would have violated the Civil Service rules because they could not just give me this job. If they created this job they would have had to allow others to apply and have a fair chance at it. Also, they told me as part of this deal, that they would freeze my pay at my current rate. This means that the other Engineering Techs employed by the City would have filed grievances because they held the same title but were not being paid the same. I declined this option they had offered. To this day, they have not hired an Engineering Tech at the plant which confirms this was just a ploy to continue to harass me and try to get rid of me.

Around the same time, the City had finally decided to fill the vacant Collections System Supervisor job. I was very well qualified for this position, but knowing that I would apply for it, they intentionally raised the job requirements, so that I would not meet these minimum requirements. I applied for this position anyway and although I had already performed these duties for more than 2

*b*

years, I did not get interviewed. They only interviewed one individual, Ryan Broadhead, who is younger and disability free. They gave him the job and he started May 1st. Later, it was found out that he had been under investigation for felony misuse of public funds at his previous job with a city in Utah. When he was charged and the city found out about it, he was terminated for not disclosing this, however, some individuals attempted to hide this knowledge from the Mayor in order to prevent it.

Sometime around March, the condition of my health declined, which I believe was a direct result of the harassment and targeting I had been experiencing. I began to experience extreme anxiety, which seemed to worsen my existing medical problems. I used up the remaining personal time that I had. During that time, the City accused me of abusing my sick leave and denied me the use of 2 of my sick days. They violated the sick leave policy in doing so and unlawfully withheld these 2 days of pay from me. When I ran out of PTO, I invoked FMLA, starting April 1st. Under FMLA, my work hours were reduced to three four-hour work days (12 hrs/wk.)

My first day back after using the last of my PTO, I had a meeting with Director Hoambrecker, HR Director Lance Dunn and my Union Steward, Jamie Knutson. During this meeting, which I have a recording of, Director Hoambrecker ruthlessly picked apart every detail regarding my attendance and made numerous disparaging comments. Note: I have reason to believe that the City violated FMLA rules will be following up on this. They also violated my rights to privacy by sharing medical issues with nonessential personnel.

March 23rd, I was told that my work station was to be relocated. Basically, I was removed from my office to make way for the incoming Collections System Supervisor, Ryan Broadhead. Instead of moving me to a smaller office that was currently unoccupied or having me share the back office that used to house 4 employees and was now used only by Laura Wolff, they put me at the front of the reception desk in the main lobby in order to watch my every move and attempt to humiliate me. So, when I returned to work in April, I started cleaning out my office as directed. Over my 20 year career, I had accumulated a lot of belongings in my office. Having gone through a back surgery just a couple of months prior to this and struggling with continued poor health, this process of cleaning out my office, carrying boxes and boxes of heavy books out by myself, wasn't easy. Often, I felt like Director Hoambrecker was belittling me for how long it took. Eventually, I did get all of my belongs, except for a mini fridge (not small mini fridge but a larger mini fridge that stood about waist high). I put off removing the mini fridge for some time due to not being up to the task of lifting and carrying it. It didn't think it was an issue or inconvenience to anyone and for weeks no one said anything to me about it. Then on June 5th, I came to work to find it had been placed directly behind my chair to the point that I could not pull my chair out enough to even sit down. Out of all of the places they could have moved, such as storing it in the completely empty office right across the hall, they put it in the one and only place it was in my way. This seemed very intentional and hostile to me. It was very upsetting.

June 8th, I was surprised when I was told that I was being placed on administrative leave. I was told I was being investigated for creating a hostile work environment. The accusations were exaggerated, taken out of context, or altogether untrue. They claimed that I had called Laura Wolff derogatory names and harassed her. Some examples of other accusations include:

Parking oddly - I parked that way to keep the sun out of my eyes; this was in the back row where there was plenty of space; there are no lines painted.

Throwing trash on the floor-"trash" was nothing more than a handful of crumpled papers; I had asked, but not been provided a garbage can at my new workstation; someone else had been using my desk and left said crumpled papers on my desk, I then placed them on the floor under my desk where no one could see them and cleaned it up at the end of my shift.

Singing, sighing loudly, banging on my desk and making other odd noises-I was listening to music, singing, drumming on the desk as I worked; no one ever informed I was being disruptive or asked me to stop (I have now found out that the clerk who sat at the end of the reception area farthest from the door, recorded me singing without my knowledge or consent, which is illegal.)

Ultimately, I was fired. The investigation completed by HR was biased from the beginning. Throughout this whole situation, clear back to when Director Hoambrecker first started, I tried to discuss what I had been going through with HR but they refused to talk to me. They did not do their due diligence to thoroughly investigate these accusations. They believed Laura and a few individuals who teamed up with her, without interviewing other witnesses or corroborating her accusations by checking the security camera footage.

Following my termination they had an article released in the Waterloo Courier describing the details of my termination, which I believe is another form of harassment. Anyone in the world can access it and it is easily found by an internet search. Besides having physical disabilities that limit the type of work I am able to do, now with this article out there, I will have a very hard time finding employment as a professional engineer. My options for income are extremely limited now.

After I was fired and the Collections System Supervisor, Ryan Broadhead was fired, they combined these 2 positions, creating a new position that matched Laura abilities, which they gave to Laura Wolff, despite the fact that she isn't even remotely qualified for either position. I am more qualified than she is in education and experience (in both quantity and relevancy). But she is younger, free of disability, and is now doing the exact same job that I was and getting paid roughly the same.

So in summary, after over 20 years of dedicated service with a flawless record, they targeted and harassed me, wrote me up, suspended me, failed to promote me, demoted me and eventually terminated me. When you look at the whole picture, it is very obvious that these accusations were made up in a concerted effort by a handful of individuals who wanted to get rid of me, because of my age and disability, for supporting Larry Smith or in the case of Laura Wolff, personal gain. And I have more than enough evidence to support this claim.

I certify under penalty of perjury and pursuant to the laws of the State of Iowa and the laws of the United States of America that the preceding charge is true and correct.

8

See additional attached page for signed copy

_____     _____
**Signature of Complainant (REQUIRED)**                              **Date**

It is not necessary that you provide any additional documentation at this time. Be aware that any additional documentation provided with your complaint form will be sent out to all named parties along with this form. An opportunity to provide additional documentation will be given at a later time if/when the complaint is accepted by the ICRC.

٩



X _____      2/23/2018
Signature of Complainant (REQUIRED)     Date

It is not necessary that you provide any additional documentation at this time. Be aware that any additional documentation provided with your complaint form will be sent out to all named parties along with this form. An opportunity to provide additional documentation will be given at a later time if, when the complaint is accepted by the ICRC.

Page 9 of 9

# IOWA CIVIL RIGHTS COMMISSION

# Authorization Release Form

I hereby authorize anyone possessing medical, education, personnel, income, credit, or any other information necessary for a full and complete investigation, mediation, or conciliation of my complaint to furnish such information to the Iowa Civil Rights Commission and any other anti-discrimination agency.

I hereby release anyone so authorized, the Iowa Civil Rights Commission, and any other anti-discrimination agency from all liability for any damages whatsoever in furnishing and obtaining such information.

Name: _MARK L. BRANDES_

Signature: _____ Date: _2/23/2018_

Iowa Civil Rights Commission, Grimes State Office Building, 400 E. 14th St., Des Moines, Iowa 50319-0201
515-281-4121 / 1-800-457-4416 / Fax 515-242-5840 / icrc@iowa.gov

# IOWA CIVIL RIGHTS COMMISSION

# Contact Information

> Note: This information will NOT be given out to anybody.
> It is for ICRC use only.

Your Name: _Mark L. Brandes Sr._

## Contact Person

Please provide the name and telephone number of a relative or friend who will always know where you can be reached. Your "Contact Person" should be someone who does not live with you.

Name: _Mark Brandes Jr._

Mailing Address: _4039 George Dr_

City: _Waterloo_

State: _IA_

Zip Code: _50703_

Telephone #: (home) _____

      (work) _____

      (cell) _319-269-2953_

E-mail: _____

☐ Please check box if the above listed Contact Person is Complainant's attorney and is representing the Complainant before the ICRC.

Grimes State Office Building, 400 E. 14th Street, Des Moines, Iowa 50319-1004
515 281-4121 / 1-800-457-4416 / Fax 515-242-5840 / icrc@Iowa.gov

## Administrative Release
### (Letter of Right-To-Sue)

| To: | ) | From: |
|---|---|---|
| MARK BRANDES, SR. | ) | Iowa Civil Rights Commission |
| 616 JONES RD. | ) | Grimes State Office Building |
| EVANSDALE, IA 50707 | ) | 400 E. 14th Street |
| | ) | Des Moines, Iowa 50319 |

Complaint CP# 02-18-71700      EEOC# 26A-2018-00380C

This is your Administrative Release (Right-To-Sue) Letter issued pursuant to Iowa Code § 216.16 and 161 Iowa Administrative Code Section § 3.10. It is issued pursuant to your request.

The conditions precedent found in 161 Administrative Code § 3.10(2) have been met.

With this Right-To-Sue Letter, you have the right to commence an action in district court. That action must be commenced within ninety (90) days of the Right-To-Sue Letter issuance date, 7/18/2018. The Right-To-Sue Letter is not a finding by the ICRC on the merits of the charge. The ICRC will take no further action in this matter.

A copy of the Right-To-Sue Letter has been sent to the Respondent(s) as shown below. The Administrative Rules allow any party to a complaint to request a copy of the file when a Right-to-Sue has been issued. The Administrative Rules allow any party to a complaint to request a copy of the file when a Right-to-Sue has been issued. If you or your attorney would like to obtain a copy of the file, please submit your request in writing via regular mail, fax, or email to icrc@iowa.gov. The copy and processing fees are as follows:

- Photocopy of investigative files - .25¢ per page; copies of digital recordings $15.00 per electronic storage device (hard copy); actual cost of postage; search/supervisory fee $26.00 per hour
- Scanned copy of investigative files - $15.00 for first 150-page batch; $10.00 for each 150-page batch thereafter; copies of digital recordings $10.00 per electronic storage device (electronic copy); search/supervisory fee $26.00 per hour

If you opt for an electronic copy, you must provide an email address in order to receive the copy.

The Iowa Civil Rights Commission
Phone: (515) 281-4121
FAX: (515) 242-5840
Email: icrc@iowa.gov

cc: File
    LARRY J. THORSON, Complainant's Attorney
    BRADLEY M. STROUSE AND BRUCE GETTMAN, Respondent's Attorney
    CITY OF WATERLOO, IOWA
    JIM RODEMBYER, FORMER INTERIM DIRECTOR OF HR
    LANCE DUNN, HR DIRECTOR
    CHERYL HUDDLESTON, HR MANAGER
    STEVE HOAMBRECKER, DIR WASTE MANAGEMENT SERVICES
    QUENTIN HART, MAYOR

# EXHIBIT " β "